# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>MARTIN ALVAREZ-RODRIGUEZ, et al.,<br><br>                    Defendants. | Case No.  2:06-cr-00155-PMP-GWF<br><br>**FINDINGS & RECOMMENDATION**<br><br>(Defendant's Motion to Suppress - #23) |

      This matter is before the Court on Defendant Martin Alvarez-Rodriguez's Motion to Suppress (#23), filed on September 15, 2006 and the Government's Amended Response Motion to Suppress Physical Evidence (#26), filed September 29, 2006.  Pursuant to stipulations by the parties, the hearing on Defendant's motion was continued to March 26, 2007.  Because Defendant's Motion concerns whether the officer's declaration provided probable cause for issuance of a search warrant, and there are no material facts in dispute, the parties stipulated that an evidentiary hearing is not required in this matter.

## FACTS

      On May 5, 2006, at approximately 1:40 a.m., Detective J. Pope of the Las Vegas Metropolitan Police Department applied to District Judge Kathy Hardcastle, of the Eighth Judicial District Court, Clark County, Nevada, for the issuance of a Telephone Search Warrant pursuant to NRS § 179.045. The following facts are taken from Detective Pope's *"Narcotics Bureau Search Warrant Declaration" ("Declaration")*, which is attached as Exhibit 1 to the Government's Amended Response Motion to Suppress Physical Evidence (#26):

On April 27, 2006, Detective J. Burns, who was working in an undercover capacity, received a telephone call from a subject named "Chappo," who had been given Detective Burns' name by a confidential informant. Detective Burns thereafter met with "Chappo" on April 27, 2006 and purchased 28.8 grams of methamphetamine from him. Following this transaction, "Chappo" was identified as Francisco Mitchell (i.e., "Francisco Michel"), the co-defendant in this case. On May 2, 2006, Detective Burns called "Chappo" and arranged to buy four ounces of methamphetamine from him to be delivered the following day, May 3, 2006.

On May 3, 2006, Detective Burns called "Chappo" and asked for the four ounces of methamphetamine. "Chappo" advised Detective Burns that he owed his narcotics supplier $200 and Detective Burns agreed to provide the $200 to "Chappo" so that he could pay his supplier and provide Detective Burns the four ounces of methamphetamine. Thereafter, Detective Burns met with "Chappo" at a Shell gas station on the corner of Cambridge and Desert Inn Road in Clark County and gave "Chappo" the $200 to pay his narcotics supplier. "Chappo" was then "surveilled directly to 450 E. Twain, where he parked by a white Ford F150 extended cab pickup bearing California plates 6S02151." *Declaration*, page 2. "Chappo" exited his vehicle and met with an unidentified Latin male. A Detective Roman observed "Chappo" conduct a hand-to-hand transaction with the Latin male. "Chappo' then entered his vehicle and left the area.[1] The Latin male was then observed to immediately walk to Apartment #34 at 450 E. Twain and go inside.

The following day, May 4, 2006, Detective Burns received a phone call from "Chappo" who asked him if he was ready to do the "QP," which Detective Burns understood to mean one quarter pound of methamphetamine. Detective Burns advised "Chappo" that he needed approximately one hour. A little over an hour later, Detective Burns left "Chappo" a voice mail message that he was ready to conduct the transaction. "Chappo" called the detective back and stated that he would call his connect to give him a ride. "Chappo" stated that his connect was coming from "North Town." About an hour and half later, "Chappo" called Detective Burns and stated that he was on Sahara Avenue and was on

---

[1] "Chappo" was followed by police after he left 450 E. Twain and he drove to the area of "Silver Dollar" where he exited his vehicle.

his way to Detective Burns' house. Detective Burns had previously told "Chappo' that he resides in the area of U.S. Highway 95 and Durango. Detectives then drove to the area of a Dodge Dealership located at Skypoint and Tenaya streets where Detective Burns told "Chappo" to meet him.

At 9:36 p.m., "Chappo" called Detective Burns and told him he was at the Town Center Lounge located at 6000 Skypoint. Detective Burns advised "Chappo" that he would meet him there and that "Chappo" could then follow Detective Burns to his residence. At 9:40 p.m., another officer, Detective Gentner, observed the white Ford extended cab pickup with California license plates at the gas pumps next to the Town Center Lounge. The pickup was occupied by two Latin males. Detective Burns then arrived and parked on the opposite side of the gas pumps from the Ford pickup. Detective Burns walked to the driver's side of the pickup and observed "Chappo" in the front passenger's seat. An unknown Latin male was in the driver's seat. Detective Burns asked to buy the narcotics in the parking lot. "Chappo" said no and stated they wanted to do the sale at Detective Burns' residence. Detective Burns asked to see the methamphetamine before he took "Chappo" and the other individual to his residence. "Chappo" stated that the methamphetamine "was stashed and they could not get to it." *Declaration*, page 3. "Chappo" stated that he would show the narcotics to Detective Burns before he got the money at his apartment.

At that point, the detectives decide to take "Chappo" and the driver of the truck into custody. After taking the two men into custody without incident, "Chappo" identified himself to Detective Pope as Francisco Michel. The driver identified himself as Martin Alvarez-Rodriguez. A police sergeant requested that a canine narcotics dog be brought to the scene. Upon arrival at approximately 10:26 p.m., the narcotics dog sniffed the vehicle and alerted to a white Rubbermaid ice chest that was in the rear passenger area of the vehicle, and to the front passenger area of the vehicle. Detective Burns then recovered 117.9 grams of methamphetamine from the vehicle.

Francisco Michel was advised of his *Miranda* rights at 10:29 p.m. by Detective Pope. Michel advised the officers that he had known the driver of the truck, Defendant Alvarez-Rodriguez, for approximately three weeks. He told Detective Pope that he and the driver were delivering four ounces of methamphetamine "to the guy in the blue truck, referring to Det. Burns." *Declaration*, page 3. Michel also stated that he met the driver of the white truck on May 3, 2006 in the area of Twain and

1  Paradise, which is near 450 E. Twain.

2  Other officers established surveillance at 450 E. Twain near Apartment #34.  These officers
3  observed persons in the apartment and lights going on and off.  During this time, the cell phone, which
4  had been in Michel's possession when he was arrested, was ringing nonstop.

5  Detective Sedano, who was apparently one of the detectives that participated in the arrest of
6  Michel and Defendant Alvarez-Rodriguez, took what appeared to be a house key from the Defendant's
7  truck key ring.  Detective Sedano took this key to 450 E. Twain.  After contacting the apartment
8  manager, Detective Sedano knocked on the door of Apartment #34, which was answered by a Latin
9  female.  The Latin female told the detective that no one else was present in the apartment.  Detectives
10 then conducted a sweep of the apartment, located no one else in the apartment and froze the premises
11 while a search warrant was sought.  The key obtained from Defendant Alvarez-Rodriguez's key ring
12 was tried in the apartment door lock and opened the door.  The Latin female, who identified herself and
13 stated that she was 16 years old, told the detectives that Defendant Alvarez-Rodriguez was her brother.
14 She told the officers that Defendant Alvarez-Rodriguez waves a magnet near the steering wheel of his
15 truck which opens a secret compartment.  She also told the officers that Alvarez-Rodriguez keeps his
16 money and other valuables in the compartment.

17 Based on these facts, Detective Pope requested the issuance of search warrants to search the
18 premises at 450 E. Twain, Apartment #34 and the white Ford pickup for methamphetamine, controlled
19 substances paraphernalia, proceeds from narcotics transactions and personal property which would
20 identify possessory interest in the items seized.  Judge Hardcastle approved the issuance of the search
21 warrants.  The search of the premises at 450 E. Twain, Apartment #34, resulted in the discovery of
22 methamphetamine and $5,911.00 in U.S. currency.   A further search of the Ford pickup did not result
23 in the discovery of additional evidence.

## DISCUSSION

25 The Fourth Amendment secures "the right of the people to be secure in their persons, houses,
26 papers and effects against unreasonable searches and seizures" and provides that "no Warrants shall
27 issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place
28 to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  Evidence obtained in

1  violation of the Fourth Amendment, and evidence derived from it, may be suppressed as the "fruit of
2  the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).
3        In *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2329 (1983), the Supreme Court stated
4  that probable cause is a fluid concept – turning on assessment of probabilities in particular factual
5  contexts – not readily, or even usefully, reduced to a neat set of legal rules. *Gates* further states:

> The task of the issuing magistrate is simply to make a practical common-sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

      "Whether there is a fair probability depends upon the totality of the circumstances including reasonable inferences and is a 'commonsense, practical question.'" *United States v. Kelley*, — F.3d — 2007 WL 610974 (9th Cir. 2007), *citing United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006 (en banc). An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause. A magistrate's determination of probable cause based on an affidavit providing a factual basis for the determination should be paid great deference by the reviewing court. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331. *Kelly* further notes that the Supreme Court in *Gates* reminded reviewing courts that "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Kelly, citing Gates,* 462 U.S. at 237 n.10, 103 S.Ct. 2317 (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684(1965)).

      In this case, the declaration showed that Detective Burns initially purchased a quantity of methamphetamine from Michel/"Chappo" on April 27, 2006 and thereafter agreed to purchase an additional four ounces of methamphetamine. On May 3, 2006, Detective Burns met with Michel/"Chappo" and gave him $200 to pay his narcotics supplier so that Michel/"Chappo" could deliver the narcotics to Burns. Officers followed Michel/"Chappo" from this meeting to the vicinity of 450 E. Twain, where they observed him park near the white Ford pickup truck and engage in a hand-to-hand transaction with an unidentified Latin male who then entered Apartment #34. The following day,

1  May 4 2006, Detective Burns met with Michel/"Chappo" and his "connection", whom Michel/
2  "Chappo" stated would drive him to the meeting to complete the narcotics transaction. Michel/
3  "Chappo" and Defendant Alvarez-Rodriguez were in the same white Ford pickup that the officers had
4  observed at 450 E. Twain the day before when Michel/"Chappo" engaged in the hand-to-hand
5  transaction with the Latin male who then entered Apartment #34.  Although Michel/"Chappo" declined
6  to complete the narcotics transaction in the parking lot, he indicated that he would show the
7  methamphetamine to Detective Burns once they arrived at Detective Burns' apartment.  This statement,
8  combined with the fact that Detective Burns had arranged to meet with Michel/"Chappo" to complete
9  the sale, reasonably indicated that the drugs were present in the vehicle. At that point, the officers had
10  probable cause to arrest or at least reasonable suspicion to detain Michel/"Chappo" and Defendant
11  Alvarez-Rodriguez to further investigate for the presence of narcotics in the vehicle.  A narcotics dog
12  was then brought to the scene and alerted to the presence of narcotics in the vehicle, which provided
13  any additional necessary basis for probable cause to search the vehicle.  The vehicle search resulted in
14  the discovery of methamphetamine in the vehicle.

15  After being advised of his *Miranda* rights, Michel/"Chappo" told Detective Pope that he had
16  known the driver of the truck, Defendant Alvarez-Rodriguez, for approximately three weeks and that
17  they were delivering four ounces of methamphetamine to Detective Burns.  He also advised Detective
18  Pope that he had met with the Defendant in the area of Twain and Paradise, which is near 450 E. Twain,
19  on May 3, 2006, which was consistent with the observations that the detectives made when they
20  followed Michel from his meeting with Detective Burns to 450 E. Twain and observed the Ford truck,
21  the hand-to-hand transaction with the Latin male, and then saw the Latin male enter Apartment #34.
22  The detectives also obtained a house key from Defendant Alvarez-Rodriguez's key ring which fit the
23  lock at 450 E. Twain, Apartment #34.  The female who was encountered at that residence identified
24  herself as Defendant Alvarez-Rodriguez's sister.

25  These facts, all set forth in Detective Pope's declaration, were sufficient to provide probable
26  cause to believe that Defendant Alvarez-Rodriguez was a participant with Michel in the narcotics
27  transaction, i.e., that he was Michel's "connection" or supplier, that Defendant Alvarez-Rodriguez was
28  connected and had access to 450 E. Twain, Apartment #34, and that methamphetamine and other

1  evidence relating to narcotics transactions would be discovered in that residence.

2        In Defendant's written Motion to Suppress (#23), Defendant's previous counsel argued that the
3  declaration was not sufficient to provide probable cause to search the apartment because nothing in
4  Detective Pope's declaration stated that drugs were ever dealt from the apartment and provided no
5  nexus between Defendant Alvarez-Rodriguez and the apartment before the detectives interviewed his
6  "girlfriend", i.e., Defendant's sister.  Defendant also argued that Francisco Michel's statement that he
7  met with Defendant Alvarez-Rodriguez at Twain and Paradise the day before the arrest did not establish
8  probable cause to believe that evidence of a crime would be found in Apartment #34 at 450 East Twain.
9  For the reasons set forth above, the Court disagrees and concludes that the declaration provided
10 probable cause that Defendant Alvarez-Rodriguez was involved in the narcotics transaction as Michel's
11 supplier, that Defendant had access to the apartment where he and Michel had been observed the
12 preceding day shortly after Detective Burns gave Michel the money to pay his supplier, and therefore
13 probable cause to believe that narcotics and related criminal evidence would be found there.  Any
14 doubts regarding the sufficiency of this evidence to establish probable cause should be resolved in
15 deference to Judge Hardcastle's determination that probable cause existed to support the issuance of the
16 search warrant.

17       At the hearing in this matter, Defendant's counsel changed the theory as to why the search
18 warrant in this case is deficient.  Defendant's counsel now argued that the officers did not have
19 probable cause to detain or arrest Co-Defendant Michel and Defendant Alvarez-Rodriguez on May 4,
20 2006 in the parking lot of the Town Center Lounge, and that the evidence seized pursuant to the
21 subsequent search warrant should therefore be suppressed as the fruits of the poisonous tree.  The
22 Government objected to this argument on the grounds that it was not raised in Defendant's written
23 Motion to Suppress (#23).  The Government's objection in this regard is probably correct.  *See United*
24 *States v. Bynum*, 362 F.3d 574, 583-84 (9th Cir. 2004), in which the district judge declined to consider
25 defendant's argument whether evidence was in "plain view" when he failed to raise it in his written
26 motion to suppress and therefore did not provide prior notice to the Government of this argument as
27 part of his written motion to suppress.  In any event, Defendant's argument is without merit.  The Court
28 finds that the declaration provided sufficient evidence that the officers had probable cause to detain and

1 arrest Michel and Defendant Alvarez-Rodriguez and to search the Ford pickup truck during the
2 narcotics sales transaction that preceded the search of the premises at 450 East Twain, Apartment #34.

3       The Government also argues in its Response (#26) that even if the Court concludes that the
4 search warrant was not supported by probable cause, the search and seizure of evidence must be upheld
5 under the good faith exception in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677
6 (1984). *Leon* states that even if the reviewing court determines that the search warrant was not
7 supported by probable cause, evidence seized pursuant to the warrant will not be suppressed if the
8 officer's reliance on the warrant was objectively reasonable and he acted in good faith in conducting the
9 search. It is the Government's burden to demonstrate that the officer's reliance was objectively
10 reasonable and in good faith. *United States v. Michaelin*, 803 F.2d 1042, 1048 (9th Cir. 1986); *United*
11 *States v. Kow,* 58 F.3d 423, 428 (9th Cir. 1995). *Leon* identified four circumstances in which such
12 reliance is not objectively reasonable. These include circumstances in which (1) the magistrate or judge
13 were misled by information in the affidavit which the affiant knew was false or would have known was
14 false, but for his reckless disregard for the truth, *see Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674,
15 57 L.Ed.2d 667 (1978); (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the
16 affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely
17 unreasonable; or (4) the warrant was so facially deficient, such as in failing to describe the place to be
18 searched or the things to be seized, that the executing officers could not reasonably presume it to be
19 valid. *See also United States v. Brown*, 951 F.2d 999, 1004 (9th Cir. 1992).

20       Defendant has not challenged the truthfulness of the facts set forth in the declaration pursuant to
21 *Franks v. Delaware*. Nor is there any basis to support a finding that the declaration fell short of the
22 standards for the officers to have relied in good faith upon it under the other circumstances identified in
23 *Leon.* The information set forth in the declaration therefore satisfies the Government's burden under
24 the good faith exception. Thus, even if the Court were to conclude that the declaration did not provide
25 probable cause to search the premises at 450 East Twain, Apartment #34, the Court would uphold the
26 search and deny Defendant's motion to suppress based on the objectively reasonable and good faith
27 reliance of the officers on the search warrant.
28 . . .

## CONCLUSION

The Court concludes that the search warrant to search the premises at 450 East Twain, Apartment #34, for methamphetamine and related evidence of criminal narcotics transactions was supported by probable cause. The Court further concludes that even if probable cause was lacking to support the issuance of the search warrant, Defendant's motion to suppress should be denied based on the officer's good faith reliance on the warrant.

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (#23) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 28th day of March, 2007.

_____
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE